# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE SORIA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:18-cv-00089-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

_____/

## I.    INTRODUCTION

On January 18, 2018, Plaintiff Catherine Soria ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") benefits under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 5, 6.)

# II.     FACTUAL BACKGROUND

On July 22, 2014, Plaintiff filed an application for DIB payments, alleging she became disabled on August 1, 2012, due to a back injury.  (Administrative Record ("AR") 18, 22, 57, 68, 154–59, 172, 190.)  Plaintiff subsequently amended her alleged onset date to April 24, 2013.  (AR 43.)

Plaintiff was born on April 24, 1963 and was 50 years old on the alleged onset date.  (AR 36–37, 57, 68, 154, 193.)  She graduated from high school.  (AR 173.)  From 1993 to 2013, Plaintiff worked at a poultry plant.  (AR 25–26, 160, 163–65, 173, 184.)

## A.     Relevant Medical Evidence[2]

### 1.     David Rollins, M.D.

In September 2011, while working as a bagger at the poultry plant, Plaintiff reportedly injured her back as she was walking on the sidewalk outside the plant.  (AR 235, 306.)  She thereafter reported low back pain that radiated into her lower right extremity and right hip pain.  (AR 235–36, 306–07, 499.)  An x-ray of Plaintiff's lumbar spine taken October 3, 2011, showed bilateral L5 spondylosis, spondylolisthesis in the "bending films," and 5 to 10 mm anterolisthesis.  (AR 505.)  Plaintiff's hip x-ray taken that same day was within normal limits.  (AR 505.)  On November 2, 2011, magnetic resonance images (MRIs) were taken of Plaintiff's lumbar spine, which showed "[m]ild disc disease at L1-L2 and L2-3 without stenosis," and were suggestive of a "pars defect" at L5 "without significant spondylolisthesis."  (AR 496, 499, 505, 681–82.)  A CT scan of Plaintiff's lumbar spine performed on March 15, 2012, showed "[d]egenerative changes in the L5-S1 level due to the presence of bilateral L5 spondylosis and anterior lithesis."  (AR 505.)

On August 6, 2012, Plaintiff presented to Dr. Rollins for an evaluation of her lumbar injury.  (AR 499–507.)  She complained of low back pain with radiation in both buttocks, that is frequent in duration, mild in intensity, and increases with prolonged standing, twisting, or bending.  (AR 500.)  Upon examination, Plaintiff had tenderness to palpation in her lumbar spine with limited range of motion.  (AR 503.)  Her straight leg raising test was positive bilaterally.

---

[2] Plaintiff's assertions of error are limited to the ALJ's assessment of the medical opinion evidence and Plaintiff's subjective complaint testimony (Doc. 17 at 13–22), only evidence relevant to those arguments is set forth below.

(AR 503.) Dr. Rollins observed that Plaintiff's Waddell's signs were "notably positive" and that the "clinical examination suggests symptom amplification with reported subjective symptoms in excess of what would be anticipated for objective findings." (AR 503, 506.) He further noted that treatment records from June 2012 indicated that surgery "would not significantly assist her" and recommended "ongoing conservative care." (AR 500, 640.) Dr. Rollins opined that Plaintiff was limited to lifting, pushing, and pulling only five pounds, occasional bending; and working only eight hours per day. (AR 506, 643.)

## 2. Jackie T. Chan, M.D.

On August 30, 2012, Plaintiff presented to Jackie Chan, M.D., complaining of persistent back pain that ranges from "6 to 10." (AR 295–97, 496–98.) Upon examination, Plaintiff had lumbosacral spine range of motion of 70%, with tenderness to palpation. (AR 296, 497.) Her straight-leg raising test elicited hamstring tightness and back pain that was greater on the right than the left. (AR 296, 497.) Sensation and strength in Plaintiff's bilateral lower extremities were normal. (AR 296, 497.) Dr. Chan noted lumbar strain with myofascial pain, possible right lumbar radiculitis, and evidence of mild generalized degenerative changes throughout the upper lumbar and lower thoracic spinal levels. (AR 297, 498.) Dr. Chan recommended acupuncture and trigger point injections as treatment options. (AR 297, 494–95, 498.)

In September 2012, Plaintiff underwent acupuncture treatments, which were "ineffective." (AR 281, 283–94, 482, 485–89, 491.) Dr. Chan evaluated Plaintiff on September 26, 2012, and noted that Plaintiff had "bilateral L5 pars defects with persistent back pain and leg symptoms." (AR 281, 482.) Plaintiff agreed to undergo trigger point injections. (AR 281, 482.) Dr. Chan also recommended additional epidural injections and prescribed pain medications, including Vicodin. (AR 281, 482.) Trigger point injections were administered in October 2012. (AR 279–80, 435–79.)

In October 2012, Plaintiff presented to Dr. Chan for a follow up. (AR 276, 433.) Dr. Chan noted that Plaintiff "has what appears to be possible right lumbar radiculitis" and "has a lot of myofascial low back pain." (AR 276, 433.) Upon examination, Plaintiff had pain in her back with range of motion. (AR 276, 433.) Dr. Chan noted that the trigger point injections helped, but only

temporarily. (AR 276, 433.) Plaintiff inquired about epidural injections, which Dr. Chan recommended. (AR 276, 433.) In December 2012, Plaintiff received an epidural injection at L4-L5. (AR 270–72, 275, 425–433.)

Following the epidural injection, Plaintiff was examined by Dr. Chan. (AR 269, 424.) Tenderness was noted along the lumbar paraspinal muscles and she had back pain with range of motion. (AR 269, 424.) Plaintiff's straight leg raising test was positive on the right side with some parasthesias radiating to her toe. (AR 269, 424.) Mild parasthesias was also noted along Plaintiff's anterior right thigh. (AR 269, 424.) Dr. Chan recommended a second epidural injection, which was administered in January 2013. (AR 262–66, 268–70, 417–24.)

Plaintiff presented to Dr. Chan in February 2013 complaining that her pain had returned following the epidural injections. (AR 255, 258, 262, 400, 404–05, 417.) Moderate tenderness was noted along the lumbar paraspinal muscles with pain with range of motion, and Plaintiff's gait was observed to be "mildly antalgic." (AR 258, 404.) Plaintiff was provided pain medication and a prescription for a lumbar corset brace. (AR 258, 403–404.)

### 3.      Aruna Rao, M.D.

On October 10, 2013, Plaintiff established care with Dr. Rao. She presented complaining of low back pain that she described as "6/10" severity, with radiation to her right thigh and weakness in her right leg. (AR 370.) Upon examination, Plaintiff exhibited spasms in her lumbar paraspinal muscles and stiffness. (AR 371.) Dysesthesia was noted to light touch at L5 on the right side. (AR 371.) Strength in Plaintiff's bilateral lower extremities was normal. (AR 371.)

Plaintiff presented for a follow-up in November 2013. (AR 359.) Upon examination, Dr. Rao noted "limited mobility" in Plaintiff's lumbar spine with forward flexion 25 degrees and extension about five degrees with pain and discomfort. (AR 360.) Antalgic gait was noted on the right side. (AR 360.) Dr. Rao diagnosed Plaintiff with lumbar radiculitis, spondylolisthesis at L5-S1, lumbar facetal pain, and myofascial pain. (AR 360.)

In December 2013, Plaintiff reported that she cannot stand or walk for more than one hour due to persistent back pain and also has difficulty reaching. (AR 353.) Dr. Rao noted spasms, stiffness, and limited mobility in Plaintiff's lumbar spine. (AR 354, 357.) He opined that Plaintiff

could return to a "sedentary job, mostly sitting job" with "no prolong[ed] walking or standing of more than 30 minutes" in an eight-hour shift. (AR 355.)

In January 2014, Plaintiff complained of persistent low back pain and weakness in her right leg that was aggravated with routine household activities. (AR 350.) Physical examination showed tenderness, spasms, and stiffness in Plaintiff's lumbar spine, with an antalgic gait noted on the right. (AR 351.) Plaintiff's strength was normal in her bilateral lower extremities, although Dr. Rao noted she "seems guarded with spinal mobility." (AR 351.) Plaintiff was deemed able to return to a "sedentary work with sitting" job. (AR 352.)

Plaintiff was seen by Dr. Rao on in February 2014 for her persistent low back pain. (AR 347.) Dr. Rao noted Plaintiff's strength was "4+/5 in the right EHL and dorsiflexion due to poor effort." (AR 348.) In March 2014, Dr. Rao's physical findings were largely unchanged, and he opined that Plaintiff could return to a "sedentary job." (AR 346.)

Plaintiff complained to Dr. Rao's nurse practitioner (N.P.), Julie Mallory, of weakness to her lower right extremity in May 2014. (AR 338.) Upon physical examination, tenderness, spasms, stiffness in Plaintiff's back were noted, with pain to light touch to the right posterior leg. (AR 339.) Plaintiff's strength in her lower extremities was normal. (AR 339.) N.P. Mallory's physical findings were unchanged in June and August 2014. (AR 335–37, 747–49.)

In October and November 2014, Dr. Rao noted pain and "[l]imited mobility" in Plaintiff's lumbar spine. (AR 739, 745.) He opined Plaintiff was limited to a sedentary job. (AR 740, 746.) From December 2014 to April 2015, Plaintiff's physical examinations showed tenderness, stiffness, and spasms in Plaintiff's back, with normal strength in Plaintiff's lower extremities. (AR 726–43.) In May and July 2015, Dr. Rao observed a positive Patrick's test on Plaintiff's right side and recommended that she return to a sedentary job. (AR 718–19, 724–25.) Limited mobility was noted in Plaintiff's lumbar spine in August and October 2015, with spasms, stiffness, tenderness, but normal strength. (AR 712, 715.) Dr. Rao opined that Plaintiff was restricted to a sedentary job. (AR 713, 716.)

On September 22, 2015, while under Dr. Rao's care, Plaintiff presented to the emergency department with abdominal pain, nausea, and vomiting. (AR 587–614.) During her physical

examination, the emergency department provider noted "[n]o erythema, no edema, [full range of motion] at all joints, [and] 5/5 muscle strength in all joints."  (AR 597.)  Plaintiff was diagnosed with inflammation of her gall bladder and it was surgically removed on September 24, 2015.  (AR 587–639.)

In November 2015, Dr. Rao observed Plaintiff's strength was "4+/5" in her bilateral lower extremity, with spams, tenderness, and stiffness, and limited her to a sedentary job.  (AR 706–07.)  Plaintiff's limited lumbar spine mobility was noted in December 2015, along with spasms, stiffness, and a positive Patrick's test.  (AR 709.)  Plaintiff's physical examinations in January, February, and April 2016 continued to demonstrate limited mobility in her lumbar spine, along with tenderness, spasms, stiffness, and antalgic gait, and Dr. Rao opined Plaintiff was limited to a sedentary job.  (AR 665–66, 700–01, 703–04.)

In June 2016, Dr. Rao noted Plaintiff's "[r]ight ankle dorsiflexion and plantar flexion strength" was "4/5".  (AR 659, 694.)  Plaintiff again was noted to have limited mobility in her lumbar spine in July 2016.  (AR 691.)  In August 2016, Plaintiff continued to exhibit tenderness, spasms, and tenderness in her back, as well as right ankle dorsiflexion and plantar flexion strength of "4+/5".  (AR 688.)  Dr. Rao again opined that Plaintiff could return to a modified sedentary job.  (AR 689.)

### 4.    Jerome Robson, M.D.

On June 13, 2016, Plaintiff was evaluated by pain management specialist Dr. Robson.  (AR 673–77.)  Upon examination, Dr. Robson found Plaintiff's lumbar spine "grossly abnormal," with bilateral spasms in her latissimus dorsi.  (AR 675.)  Plaintiff could flex 45 degrees and extend 10 degrees, both with right leg pain.  (AR 675.)  She could rotate and tilt 30 degrees bilaterally with low back pain radiating down her right leg.  (AR 675.)  Dr. Robson observed Plaintiff's "[o]rthopedic tests" were positive bilaterally at 15 degrees.  (AR 675.)  He also found Plaintiff had "decreased strength bilaterally of her abductor hallicus longus" in both sides, with her right side worse than her left.  (AR 675.)  Plaintiff's CAT scan showed "anterolisthesis at L5-S1."  (AR 675.)  Dr. Robson's impression was that Plaintiff has "[l]umbar discogenic disease at L5-S1 with anterolisthesis at L5-S1" and noted her "[s]tatus post injections in the past roughly three years ago

with no benefit."  (AR 675.)  He recommended that Plaintiff try epidural steroids again before returning to a neurosurgeon for a neurosurgical evaluation.  (AR 676.)

### 5. State Agency Physicians

On September 22, 2014, Alan Coleman, M.D., a Disability Determinations Service medical consultant, assessed Plaintiff's residual functional capacity (RFC)[3] and found that Plaintiff could (1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions.  (AR 63–64.)  Plaintiff could occasionally climb ladders, ropes, and scaffolds; occasionally stoop and crawl; frequently climb ramps and stairs; frequently balance, kneel, and crouch; and had no manipulative, visual, communicative, or environmental limitations.  (AR 64.)

Upon reconsideration on January 14, 2015, another Disability Determinations Service medical consultant, J.R. Saphir, M.D., affirmed Dr. Coleman's RFC findings.  (AR 75–76.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on September 25, 2014, and again on reconsideration on January 15, 2015.  (AR 18, 80–84, 89–93.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 94–107.)

On October 11, 2016, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 36.)  Plaintiff testified that she experiences pain in her back that travels down into her right leg.  (AR 37, 45.)  She also testified that she experiences numbness in the bottom of her foot.  (AR 45.)  Plaintiff characterized her back pain as "sharp" and rated it an "eight" on a scale of one to ten, even with medications.  (AR 45, 46.)  She stated

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

7

that "[e]verything I do, if I reach out for something, it hurts my back really bad." (AR 46.) Plaintiff testified that she tries to walk for exercise but that she has pain the rest of the day as a result. (AR 48.) She stated that she has two "good" days a week and she lies down most of the other days. (AR 50.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a poultry dresser, Dictionary of Operational Titles (DOT) code 525.687-070, which was unskilled, light exertional work with a specific vocational preparation (SVP)[4] of 2. (AR 52.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work background. (AR 52.) The VE was also to assume this person could perform a range of light work defined as having the ability to: lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk for six hours in an eight-hour workday; only stand or walk less than 30 minutes at a time; stand and stretch about a minute at the end of each hour; rest for 15 minutes every two hours along with normal breaks or lunches; perform only non-complex routine tasks; occasional bending and stooping; never climb or kneel or have concentrated exposure to cold. (AR 52–53.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other, light jobs in the national economy for which a person could alternate positions, such as casher, DOT code 211.462-010 with an SVP of 2; a counter clerk, DOT code 249.366-010 with an SVP of 2; and a courier, DOT code 230.663-010 with an SVP of 2. (AR 53–54.)

In a second hypothetical, the ALJ asked the VE to consider whether a person who was absent three or more days a month due to chronic pain, reduced mobility, and fatigue could perform work in the national economy. (AR 54.) The VE testified that there would be no work that such a person could perform. (AR 54.) The ALJ posed a third hypothetical to the VE of an individual who was limited to working only five hours out of an eight-hour workday on an ongoing and continuing basis, and the VE testified there would be no work available for such an individual (AR 54.) The ALJ noted that she did "not need to go into sedentary work because

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

there are no issues of transferable skills at sedentary" and Plaintiff "would grid if that were my finding." (AR 54.)

Plaintiff's attorney asked the VE, in a fourth hypothetical, whether an individual in the first hypothetical who would be limited to never climbing ladders; rarely stooping, crouching, and climbing stairs; and lifting less than 10 pounds rarely could perform any work in the national economy. (AR 54–55.) The VE testified that such limitations would "bring us down to sedentary," which counsel noted would raise "the issue with, of gridding." (AR 55.)

## C.     The ALJ's Decision

In a decision dated December 27, 2016, the ALJ found that Plaintiff was not disabled. (AR 18–27.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 20–27.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since August 1, 2012 (step one). (AR 20.) The ALJ found that Plaintiff had the severe impairments of a disorder of the lumbar spine with right side radiculopathy and obesity (step two). (AR 20–21.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 21.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a range of work at the light exertional level as defined in 20 CFR [§] 404.1567(b). Specifically, she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand and walk six hours; and sit six hours total in an eight-hour workday. However, she cannot do any prolonged walking or standing of greater than 30 minutes at one time and when sitting, she needs the ability to stand and stretch for one minute at the end of each hour. [Plaintiff] further needs to [sic] ability to rest for 15 minutes every two hours, but this falls within the normal break and lunch periods. She can occasionally bend and stoop, but is unable to crawl or kneel. In addition, [Plaintiff] needs to avoid concentrated exposure to the cold and because of her experience of pain; she is limited to performing only noncomplex routine tasks.

(AR 21.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 25.)  The ALJ found that Plaintiff could not perform her past relevant work (step four), but that, on the basis of the RFC assessment, she retained the capacity to perform other work that existed in sufficient numbers in the national economy, including the jobs of cashier, counter clerk, and courier (step five).  (AR 26–27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 10, 2017.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

## III.  LEGAL STANDARD

### A.  Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt.

404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).  "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends, in relevant part, that the ALJ erred during the RFC analysis when determining the weight to accord to the opinions of Plaintiff's treating physician, Dr. Rao. (*See* Doc. 17 at 14–15.) For the reasons that follow, the Court agrees with Plaintiff's position.

### A. The ALJ Erred in Her Evaluation of Dr. Rao's Opinions

#### 1. Overview of Analysis

The ALJ determines a claimant's RFC before step four of the sequential evaluation analysis. *See, e.g.*, 20 C.F.R. § 404.1520(e). A claimant's RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* § 404.1545(a)(1). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . . ." *Robbins*, 466 F.3d at 883. "The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence . . . ." *Jenkins v. Colvin*, Case No. 1:15-cv-01135-SKO, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (citing *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001)). Additionally, "[t]he ALJ can . . . decide what weight to give to what evidence as long as the ALJ's reasoning is free of legal error and is based on substantial evidence." *Tremayne v. Astrue*, No. CIV 08–2795 EFB, 2010 WL 1266850, at *12 (E.D. Cal. Mar. 29, 2010) (citing *Reddick v. Chater*, 157 F.3d 715 (9th

Cir. 1998)).

"In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick*, 157 F.3d at 725. Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

In this case, Plaintiff alleges—and the record reflects—that Dr. Rao was Plaintiff's treating physician. (*See, e.g.*, Doc. 17 at 13.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the

[Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Finally, "[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'"

*Orn*, 495 F.3d at 632–33 (quoting SSR 96–2p). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.* (quoting SSR 96–2p).

### 2. Analysis Regarding Plaintiff's Treating Physician Dr. Rao

Dr. Rao consistently opined from December 2013 to August 2016 that Plaintiff is limited to a "sedentary job," which he described as "mostly sitting" with "[n]o prolong[ed] walking or standing of more than 30 minutes in 8 hours shift." (AR 346, 352, 355, 666, 689, 701, 704, 707, 713, 716, 719, 725, 740, 746.) Although not specifically identified by the ALJ as a basis for its rejection, Dr. Rao's opinions are contradicted by the medical opinion evidence of Disability Determinations Service medical consultants Drs. Coleman and Saphir, who opined that Plaintiff could sit, stand and/or walk for about six hours in an eight-hour workday. (AR 63–64, 75–76.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Rao's opinions.

Here, the ALJ gave Dr. Rao's opinions "limited weight" because "they are inconsistent with the medical and other evidence" and "based on a different standard of disability."[5] (AR 23.) Plaintiff contends that these rationales do not constitute the requisite "specific and legitimate reason" to accord Dr. Rao's opinions reduced weight and reach a disability determination that is contrary to this treating source's opinion. (*See* Doc. 17 at 14–15.) The Court agrees.

The ALJ observed that a physical examination during Plaintiff's emergency room evaluation for gallbladder pain in September 2015 conflicted with Dr. Rao's opinions because it showed "a full range of motion and full motor strength." (AR 24 (citing AR 597).) However, in noting this evidence, the ALJ ignored contrary evidence that *supported* Dr. Rao's opinions,

---

[5] These are the only reasons cited by the ALJ for her rejection of Dr. Rao's opinions. (*See* AR 23.) Although Defendant now attempts to justify the ALJ's analysis by offering post-hoc rationale to support it, namely that Dr. Rao treated Plaintiff conservatively (*see* Doc. 24 at 6), a reviewing court cannot affirm the denial of benefits based on a reason not stated or finding not made by the ALJ, and the Commissioner's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is unavailing. *See, e.g., Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001) (an agency decision cannot be affirmed based on a ground that the agency did not invoke in making its decision); *cf. Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (remand is appropriate when a decision does not adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council") (citation omitted).

including that Plaintiff repeatedly presented with medical findings demonstrating limited range of motion in her back and right leg and weakness in her bilateral lower extremities. (*See, e.g.*, AR 258, 269, 276 (treatment notes of Dr. Chan dated from October 2012 to February 2013, which show Plaintiff experienced back pain with range of motion); AR 354, 357, 360 (treatment records of Dr. Rao dated from November to December 2013, which show limited mobility in Plaintiff's lumbar spine); AR 351 (treatment record of Dr. Rao dated January 8, 2014, that noted Plaintiff "seems guarded with spinal mobility"); AR 348 (treatment record of Dr. Rao dated February 12, 2014, which shows decreased strength in Plaintiff's right foot); AR 665, 691, 700, 703, 709, 712, 715 (treatment records of Dr. Rao dated from August 2015 to July 2016, which show limited mobility in Plaintiff's lumbar spine); AR 706 (treatment record of Dr. Rao dated November 24, 2015, which shows decreased strength in Plaintiff's bilateral lower extremities); AR 675 (report of examining physician Dr. Robson dated June 13, 2016, which shows Plaintiff experienced pain in her right leg and low back with range of motion and demonstrated "decreased strength bilaterally of her abductor hallicus longus" in both right and left sides); AR 659, 688, 694 (treatment records of Dr. Rao dated from June to August 2016, which show weakness in Plaintiff's right ankle and foot).)

The ALJ also cited Dr. Rollins' report, which noted that his clinical examination of Plaintiff "suggested symptom amplification with reported subjective symptoms in excess of what would be anticipated for objective findings," as inconsistent with Dr. Rao's opinions that Plaintiff could perform only sedentary work. (AR 23.) To begin with, while "symptom amplification" may constitute substantial evidence to discount *Plaintiff's* credibility, it does not follow that Dr. Rollins' report can be properly used to undermine Dr. Rao on this basis. As the above-quotation from the report indicates, Dr. Rollins obviously took into the account the possibility that Plaintiff was malingering in formulating his opinion, and there is no evidence that his opinion is based entirely on Plaintiff's (discredited) subjective complaints. More importantly, there is no apparent inconsistency between Dr. Rollins' and Dr. Rao's opinions, and the ALJ identifies none. (*Compare* AR 506 (Dr. Rollins' opinion that Plaintiff was limited to lifting, pushing, and pulling only five pounds; occasional bending; and working only eight hours per day) *with* AR 355 (Dr.

Rao's opinion that Plaintiff may perform a "sedentary job" comprised of "mostly sitting" with "[n]o prolong[ed] walking or standing of more than 30 minutes in 8 hours shift.").

An ALJ may properly discount a treating physician's opinion that is inconsistent with the medical record, including his own findings. *See Valentine*, 574 F.3d at 692–93. However, in so doing, an ALJ may not consider evidence that only supports the non-disability determination, while disregarding evidence that supports the contradictory opinion from a physician. *See, e.g.*, *Holohan*, 246 F.3d at 1207 (finding that "the ALJ's specific reason for rejecting [a physician's] medical opinion [was] not supported by substantial evidence" because, in part, "the ALJ selectively relied on some entries in [the plaintiff's] records . . . and ignored the many others that indicated continued, severe impairment"); *see also Reddick*, 157 F.3d at 722–23 (An ALJ may not "cherry pick" from a record to support the conclusion, but rather must account for the context of the whole record.). *See generally Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." (citations omitted)). Here, the ALJ impermissibly selected evidence that was contrary to Dr. Rao's opinions and, in the process, ignored the entire longitudinal record. *See Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) ("We cannot affirm, however, by isolating a specific quantum of supporting evidence, but must consider the record as a whole"); *Holohan*, 246 F.3d at 1205 (noting a treating physician's statements must be read in context of the overall diagnostic picture he draws). The Court therefore finds that the ALJ's citation to medical evidence is not a specific and legitimate reason to discount the opinions of treating physician Dr. Rao.

Finally, the fact that Plaintiff sought treatment from Dr. Rao in the context of a workers' compensation claim is not a sufficient reason to discount his opinions. An ALJ may not disregard a physician's medical opinion simply because it was initially elicited in workers' compensation proceedings, or because it is couched in the terminology used in such proceedings. *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, the ALJ must evaluate medical opinions couched in workers' compensation terminology just as he or she would evaluate any

other medical opinion. *Id.* The ALJ must "translate" terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination. *Id.* at 1106. The ALJ's decision "need not contain an explicit 'translation,'" but it should indicate that the ALJ recognized the differences in terminology and took those differences into account in the evaluation. *Id.*

Here, although the ALJ recognized that the workers' compensation regime makes use of different standards of disability from those used by the Social Security system (AR 23), the decision contains no indication that she adequately translated the "sedentary job" limitation ascribed to Plaintiff by Dr. Rao into corresponding Social Security terminology. In failing to translate such functional limitation, the ALJ erred. *See Booth*, 181 F. Supp. 2d at 1109; *see also Brooks v. Berryhill*, Case No. 1:17-cv-01506-BAM, 2019 WL 1431586, at *6 (E.D. Cal. Mar. 29, 2019).

### 3. Harmless Error Analysis

The Court must next address whether the ALJ's analysis pertaining to Dr. Rao's opinions was harmless error. *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (holding that the "harmless error analysis applies . . . to assess the impact of the ALJ's failure to even mention [a treating physician] or [his] notes, let alone its failure to give specific and legitimate reasons that are supported by substantial evidence for rejecting a treating source's medical opinion" (citation omitted)). The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins.*, 466 F.3d at 885). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation. v. EPA*, 540 U.S. 461, 497 (2004))). "In other words, in each case [courts] look at

the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

In this case, the ALJ's erroneous analysis pertaining to Dr. Rao was not harmless. Dr. Rao opined that Plaintiff is limited to a "sedentary job" comprised of "mostly sitting." (AR 346, 352, 355, 666, 689, 701, 704, 707, 713, 716, 719, 725, 740, 746.) However, the ALJ found that Plaintiff had an RFC to perform a range of light work, including standing and walking six hours total in an eight-hour workday, with some limitations. (AR 21.) This finding is irreconcilable with Dr. Rao's opinions. *See Booth*, 181 F. Supp. 2d at 1107–08 ("sedentary work" under California's workers' compensation scheme "contemplates the individual can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted" and is "more restrictive than a limitation to 'light' work.") (quoting *Glass v. Workers' Comp. Appeals Bd.*, 105 Cal. App. 3d 297, 302 n.1 (1980)). Indeed, had ALJ translated "sedentary" work capacity in California's workers' compensation system as equivalent to the "sedentary" work category under the Social Security disability scheme, the ALJ's RFC determination—and likely the outcome of the decision—would be different. (*See, e.g.*, AR 54 ALJ noting that Plaintiff "would grid," *i.e.*, be found disabled under the Medical–Vocational Guidelines, if she found Plaintiff was limited to sedentary work).

The Court therefore finds that the ALJ's error was not harmless. *See, e.g.*, *Molina*, 674 F.3d at 1115 (noting that an error is harmless "where it is inconsequential to the ultimate nondisability determination" (citations omitted*)). Cf. Vasquez-Pamplona v. Colvin*, Case No. CV 14-7284 JC, 2015 WL 5796994, at *5 (C.D. Cal. Sept. 30, 2015) (finding harmful error where the Court "could not find that the ALJ adequately considered and accurately accounted for the true

functional significance of the restrictions" in a treating physician's opinion since the ALJ's decision "never addressed the pertinent distinctions between the terms of art applicable to plaintiff's California workers' compensation claim and plaintiff's Social Security disability claim.").

**B.     The ALJ's Error Warrants Remand for Further Proceedings**

In her briefing, Plaintiff argues that "further administrative proceedings before the Commissioner . . . would be futile" and, instead, the Court should credit the opinions of Plaintiff's treating physician as true and order the payment of benefits under Medical–Vocational Guideline Rule 201.12.  (*See* Doc. 17 at 25.)  The Court disagrees and finds that an order for payment of benefits is inappropriate.

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted).  The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule").  In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Having found that the ALJ failed to articulate specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Plaintiff's treating physician, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional

administrative proceedings will be useful. In particular, the ALJ's RFC determination conflicted with the opinion evidence of Dr. Rao—as well as other testimony in the record. This error can be remedied with further proceedings to accord an opportunity to the ALJ to resolve this conflict.[6] *Cf. Dominguez v. Colvin,* 808 F.3d 403, 408–09 (9th Cir. 2016); *Lule v. Berryhill*, Case No.: 1:15-cv-01631-JLT, 2017 WL 541096, at *6 (E.D. Cal. Feb. 10, 2017) ("When there is conflicting medical evidence, 'it is the ALJ's role to determine credibility and to resolve the conflict.'" (quoting *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984))). On remand, the ALJ should address the error by properly considering the medical opinion evidence, including Dr. Rao's opinions "translated" under the standards of Social Security disability, and then either provide specific and legitimate reasons to reject the opinions or incorporate their limitations into the RFC determination. *Cf. Gonzalez v. Comm'r of SSA*, Case No. 16-cv-05310-KAW, 2018 WL 1426655, at *7 (N.D. Cal. Mar. 22, 2018) (remanding case "so that the ALJ can consider [treating physician's] opinion under the standards of social security disability, and whether it affects the RFC"); *Brammer v. Colvin*, Case No. EDCV 15-0756 SS, 2015 WL 9484450, at *5 (C.D. Cal. Dec. 29, 2015).

## C.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error

As the Court finds that remand is appropriate for the ALJ to reconsider the treating physician's opinion evidence and re-assess Plaintiff's RFC, the Court does not reach Plaintiff's additional assertions of error regarding the ALJ's evaluation of other medical opinions and the ALJ's failure to credit Plaintiff's subjective complaints, as both concern evidence of an alleged limitation to sedentary range of work that will be reconsidered on remand. (*See* Doc. 17 at 17–27); *cf. Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Willmett ex rel. A.P. v.*

---

[6] Moreover, even if Dr. Rao's opinions were credited, a finding of disability would not necessarily be dictated under Medical–Vocational Guideline Rule 201.12 (*see, e.g.,* AR 54), as the functional limitations related to "sedentary" work are not the same for purposes of both California workers' compensation and Social Security disability cases. *See Booth*, 181 F. Supp. 2d at 1104-05 (California workers' compensation work classification guidelines are not based on strength; rather, they turn on whether a claimant sits, stands, or walks for most of the day; whereas Social Security disability exertional categories are differentiated by step increases in lifting capacities). *See also Desrosiers v. Sec'y*, 846 F.2d 573, 576 (9th Cir. 1988).

*Astrue*, No. 2:10–cv–01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.  CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Catherine Soria and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 11, 2019**                                      /s/ *Sheila K. Oberto*
                                                                                    UNITED STATES MAGISTRATE JUDGE